Gkaham, Judge,
dissenting:
I am constrained to dissent from the opinion of the court in this case. As I see it, it involves a purely administrative question, properly and naturally within the decision of the Secretary of the Navy, and which Congress intended that he should decide.
The question in this case is whether the duties of a yeoman in the Coast Guard, which was a part of the Navy Department at the time, corresponded with the duties of a chief yeoman in the Navy. The Secretary of the Navy held that they did not, but corresponded with the duties of a yeoman, first class, and gave him that rating. The act did not automatically fix the pay. It made the pay dependent upon the decision of the preliminary question of the correspondence of duties, that is, ratings, between the petty officers in the Coast Guard and the petty officers in the Navy. It left this ques *276 tion open, to be decided by some person or body. That Congress thought it was an administrative question is shown by the fact that in the subsequent act of May 18, 1920, 41 Stat. 603, it apparently left this same question to be determined by the Secretary of the Treasury, under whose jurisdiction the Coast Guard was at that time and who prepared and issued General Order No. 43, which was necessary to carry the provision of the act into effect. At the time of the passage of the act here in question the country was at war, and under the statute creating it the Coast Guard was under the jurisdiction of the Navy Department. The Secretary of the Navy as well as the chief officer of the Coast Guard thought this was a question to be determined by the Secretary of the Navy, showing an executive construction of the act which is, at least, persuasive. It was, as I view it, an administrative act which Congress intended should be determined by the head of the department, under whose control the two branches of the service were, and who was responsible for the efficiency and discipline of each and both. The decision of the question was reposed in thé Secretary of the Navy. It involved the exercise of discretion and judgment, which is not reviewable by this court.
In this case it will ,be seen that it was necessary for a court first to pass upon and find the fact that the duties of a yeoman in the Coast Guard corresponded with those of a chief yeoman in the Navy, and thereby overrule the order of the Secretary of the Navy and his executive construction of the act, before it could reach a decision of the case in favor of the plaintiff. The case of United States v. Crosley, 196 U. S., 327, and the other cases cited in the opinion of the court I do not think are in point. No one of them involves the question of an administrative order of a department. The questions are interdepartmental, and not intradepartmental, as in this case. They involve rulings of the accounting officers of the Government.
I am of the opinion that this court has no jurisdiction, and to assume jurisdiction would be an unwarranted interference with the functions of the executive branch of the Government and an attempt to regulate the internal affairs of a department, which is no part of the functions of the judiciary.
*277 While the opinion of the court seems to assume that this act was passed only for the benefit of the officers of the Coast Guard, it is not an interpretation of the act with which I can agree. That it was not passed for the purpose of benefiting them as a body is conclusively shown by the ratings prepared by the Chief of the Coast Guard — whose view of the matter has been adopted by the court — by which rating the pay of 8 out of the 25 petty officers would have been raised and the greater portion of the other 17 lowered, and the latter were only saved from this loss of pay by the provision of the act that it should not operate to decrease compensation.
Congress is presumed to have lmown and understood that this would be the effect of the act, and it must be construed in the light of this effect. It is to be borne in mind that, generally speaking, the pay of the officers of the Coast Guard before the passage of the act was relatively higher than for similar duties and work in the Navy. The portion of the act upon which the decision is 'based is a proviso to a paragraph increasing the pay of certain petty officers and enlisted men in the Navy. Knowing that the Coast Guard was under the Navy Department, and in order to avoid the discrimination between the petty officers in it and those in the Navy performing relatively similar duties, this proviso was inserted to avoid dissatisfaction, which might affect efficiency and discipline, by providing for the equalization and uniform classification of the men in these two branches of the naval service. Its purpose was to secure uniform classification and was consequently a classification question. Being a classification question, it is peculiarly an administrative question with which the head of the Navy Department, of all persons, Congress knew would be the best qualified to deal. Undoubtedly he took this view of it in deciding it and thus gave the act an administrative construction which should be persuasive here. If Congress entrusted the decision to him, this court has no jurisdiction to overrule his judgment and discretion in the matter. Whether the Secretary decided the matter right is not for the decision of Ibis court.
*278 The opinion in this case is based upon the view that the Secretary of the Navy usurped his authority in deciding the question of fact here involved, and consequently that he had no authority to decide it. If he had no authority to decide it and issue the order fixing the rating of the men in these two branches of the service, and had not decided it, then the plaintiff could not have compelled him to decide it by mandamus proceedings. If he had not decided it, or had refused to decide it, the plaintiff’s rating and consequent rate of pay would have remained undetermined. That is, the amount of his pay would not have been fixed, for the statute did not automatically fix it. It could not be fixed until the question was determined whether he should be rated as a chief yeoman or a yeoman of the first class in the Navy. It therefore appears that had the Secretary failed to enter the order fixing the rating and the plaintiff had come into this court and asked for action, he would have been asking this court to fix his pay by first deciding the question of what his rating should be. As stated, this court has no authority to fix the pay; that is a matter for Congress. Where Congress has fixed the amount of compensation this court can enforce its payment, but it has no power to fix compensation directly or indirectly. That is to say, where the compensation is dependent upon the decision of a fact aliwnde the statute, this court by deciding that fact can not fix the compensation indirectly, which, as I view the case, is what the court is asked to do here.
If this conclusion, based upon the assumption that the Secretary of the Navy could not decide the question, be correct, then the act is inoperative because Congress failed to state, in terms, that the Secretary of the Navy should decide the question and determine the rating. This, I think, is a conclusion not justified. Bather than take this view of the matter I think that i't should be concluded that as it was an administrative question Congress intended it to be decided by the Secretary of the Navy.
I am of the opinion that the petition should have been dismissed upon the ground that the court in no aspect of the matter had jurisdiction.